**RIVERVALE REALTY CO., INC., Plaintiff,**

v.

**The TOWN OF ORANGETOWN, NEW YORK, a municipal corporation; Joseph Colello, Charles McLiverty, Cornelius O'Sullivan, Roger Pellegrini and Thomas Swift, individually and in their respective official capacities as members of the Town Board of the Town of Orangetown; and John A. Rocco, Barry W. Conroy, Jr., Gus Keramidas, Anthony Kressevich, Jr., and Mary Ann Gavioli, individually and in their respective official capacities as the Planning Board of the Town of Orangetown, Defendants.**

**No. 89 Civ. 2306 (VLB).**

United States District Court, S.D. New York.

March 29, 1993.

John S. Kinzey, LeBoeuf, Lamb, Leiby & MacRae, New York City, for plaintiff.

Vincent R. Fontana, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves claims by a real estate development company challenging, on various bases, the constitutionality of a local zoning ordinance. Plaintiff has invoked 42 U.S.C. § 1983.

In summary, a local law applicable to property owned by plaintiff Rivervale Realty Co., Inc. ("Rivervale") and other property owners substituted requirements of two-acre zoning

rather than one-acre zoning for each dwelling; pre-existing structures were excluded. Rivervale challenged in state court the environmental study on which this amendment was based; the amendment was upheld as reasonable in *Rivervale Realty v. Town Bd.,* 170 A.D.2d 762, 565 N.Y.S.2d 583 (N.Y.App. Div., 3d Dep't. 1991). Rivervale did not seek any individualized variance or exemption from the zoning authorities subsequent to the adoption of the zoning amendment.

While it has not decided what use it will make of the properties it asserts have been unconstitutionally affected by the zoning amendment, Rivervale seeks anticipatory injunctive and declaratory relief. Although Rivervale's complaint appears to attempt to raise questions as to the constitutionality of the enactment of the amendment of the local law, Complaint ¶¶ 25, 34, Rivervale's principal thrust seems to be that there are constitutional infirmities in the application of the zoning amendment to Rivervale's property.[1] The complaint alleges that the amended local law constitutes a bill of attainder and that the local authorities were biased against Rivervale; that there has been a denial of equal protection and of substantive due process; and that the action of the local authorities constituted an unconstitutional taking.

All defendants (the Town of Orangetown, the Town Board, the Planning Board and individual members of those boards) have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth in this memorandum order, I grant the motion.

## II

In December 1986 the Town of Orangetown ("Town") adopted a "Master Plan" based on a comprehensive two-year review of the Town's development and of its zoning code. The Master Plan contained proposed amendments to the Town's zoning code that were designed to guide commercial and residential development. On August 15, 1988 the Town Board adopted the amendments as Local Law No. 5 of 1988 ("Local Law No. 5"). Local Law No. 5 incorporated the proposal of the Town's Planning Board ("Planning Board") that the lands owned by any subsidiary of United Water Resources, Inc. ("UWR"), including the property at issue here belonging to plaintiff Rivervale Realty Co., Inc. ("Rivervale"), be rezoned from "Low Density Residential," or R–40 ("R–40"), which permits a density of use equal to one dwelling unit per gross acre, to "Rural Density Residential," or R–80 ("R–80"), which permits a density of use equal to one dwelling unit per two gross acres. This replacement of one-acre zoning with two-acre zoning reduced by approximately half the number of residential units that may be built on the rezoned land.

Over the next year and a half the Town held public hearings and considered applications by property owners for exceptions to the zoning amendments.[2]

While Rivervale protested against the rezoning to Rural Density Residential of 316 of its approximately 370 acres,[3] Rivervale did not apply for either an area-wide or a use variance. It rather sought to annul Local Law No. 5 through an Article 78 petition in New York State Supreme Court in December 1988, alleging lack of compliance by the Town with the State Environmental Quality Review Act ("SEQRA"), N.Y. Envt'l Conserv. Law §§ 8–0101 *et seq.* (McKinney 1984).

---

1. To the extent that Rivervale seeks to attack the constitutionality of Local Law No. 5 on its face, it confronts the burden of overcoming the presumption of validity attached to the enactment. It must show that no plausibly valid reason for the enactment exists, and that there is no reasonable basis for the choices made by the local authorities. See *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

2. The local authorities have not attempted to interfere with pre-existing uses.

3. Rivervale took the position, which may or may not have been accurate, that the ostensible purpose of including its property within the rezoned area was to protect the Town's water supply. It argued that its property within the Town was unrelated to this purpose, and that rezoning it was not necessary to protect the water supply. See Affidavit of Onofrio F. Laurino ¶¶ 5–6, June 11, 1992.

In April 1989, while its Article 78 proceeding was still pending, Rivervale instituted this federal action, asserting substantive due process, equal protection, and takings claims under the Fifth and Fourteenth Amendments, and alleging that it was intentionally "singled out for disparate zoning treatment" as "part of an 'attack' on UWR and its subsidiaries for past political disagreements between the Town of Orangetown and UWR and its affiliates." Complaint ¶ 24. Rivervale also claims that its constitutional rights were violated by enactment of a bill of attainder through punitive legislation in violation of Article I, Section 10, cl. 1 of the United States Constitution. Rivervale seeks in this action a declaratory judgment that Local Law No. 5 is illegal and unconstitutional, and preliminary and permanent relief enjoining the Town defendants from the enforcement of Local Law No. 5 against Rivervale.

In October 1989 the New York State Supreme Court denied Rivervale's Article 78 petition for lack of standing. *In the Matter of the Application of Rivervale Realty Co., Inc. v. The Town Board of the Town of Orangetown* (N.Y.Sup.Ct., Rockland Co., Index # 5988/88, see Defendants' Motion for Summary Judgment, Exh. B).

On November 29, 1989, I denied the defendants' motion to dismiss the complaint or to stay this action pending state appellate review, finding that Rivervale "raises a bundle of constitutional questions which merit exploration and resolution." Transcript, Nov. 29, 1989, see Kinzey Aff., Exh. 5 at 24.

In February 1991 the New York State Supreme Court Appellate Division, Third Department rejected the lower court's determination that Rivervale lacked standing, but it affirmed dismissal of Rivervale's petition on the merits, finding that in the SEQRA study the required "hard look" had been taken at the economic and environmental impacts of the zoning amendments. It held that the rezoning was reasonable:

> [T]he record clearly reveals that the rezoning was designed, in large part, to limit future development and preserve open space in a manner consistent with respondent's master plan. This discretionary zoning is entirely reasonable and, consider-

ing our limited authority to review, must be upheld.... We reject petitioners' remaining contentions.

*Rivervale Realty,* 170 A.D.2d 762, 565 N.Y.S.2d at 584. Rivervale did not appeal from this decision.

The New York appellate court having rendered a final decision in Rivervale's Article 78 proceeding, on defendants' summary judgment motion I now confront those constitutional issues, left open at the time I upheld the complaint, with respect to which I did not "anticipate there will be resolution in the state courts." Transcript, Nov. 29, 1989, Kinzey Aff., Exh. 5 at 24.

### III

█ Rule 56(c) Fed.R.Civ.P. provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of the motion is to determine whether there is a genuine issue for trial. A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); see *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir. 1990). On this motion for summary judgment, I am required to give Rivervale, the party opposing the motion, the benefit of any reasonable inferences from proofs submitted in determining whether there is a genuine issue of material fact which, if determined in favor of Rivervale, would warrant judgment in its favor. But Rivervale, the party with the burden of proof, has the obligation to persuade me at this stage that there is such evidence that a "reasonable jury could return a verdict" for it. Absent evidence to that effect, the defendants are entitled to judgment dismissing the claims involved. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

Applying these principles, the submissions in this case do not persuade me that on the issues presented a reasonable jury could return a verdict in favor of Rivervale.

## IV

■ A threshold issue is the ripeness of the claims for adjudication. The United States Supreme Court addressed this issue in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and established a two-pronged test for determining ripeness in cases challenging as confiscatory local land use controls. The first prong is that the government entity charged with implementing the regulations must have "reached a final decision regarding the application of the regulations to the property at issue." *Id.*, at 186, 105 S.Ct. at 3116. The second prong is that the person or entity challenging the local law must have sought compensation from the local entity if "a reasonable, certain and adequate provision for obtaining compensation" has been provided. *Id.* at 194, 105 S.Ct. at 3120.

### A. *Williamson's First Prong.*

■ The final decision standard set forth in *Williamson*'s first prong entails an inquiry as to whether or not the "initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Id.* at 193, 105 S.Ct. at 3120. The *Williamson* Court noted that in land regulation cases, application for a variance is generally the procedural predicate for the final decision upon which the ripeness inquiry rests.

Because administrative decisions on variance applications help a court to assess such significant factors as "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations," the Court in *Williamson* rejected the assertion that a property owner need not seek a variance. *Id.* at 190–91, 105 S.Ct. at 3118–19; see *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (challenge to application of zoning ordinance rejected because property owners had not yet submitted a development plan); *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 136–37, 98 S.Ct. 2646, 2665, 57 L.Ed.2d 631 (1978) (claim unripe because property owners sought approval for only one plan); *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84 (2d Cir.1992), *cert. denied sub nom. Southview Associates, Ltd. v. Individual Members of Vermont Environmental Bd.*, —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153.

The final decision test has been applied to takings claims, and to substantive due process claims that regulation has gone so far that it has the same effect as a taking by eminent domain, *Williamson*, 473 U.S. at 186, 197, 105 S.Ct. at 3116, 3122. It was recently applied in this Circuit to substantive due process claims based on a theory of arbitrary and capricious decision-making. *Southview*, 980 F.2d at 95–96. It would appear that the final decision prong of *Williamson* also applies to equal protection claims. See *Southview*, 980 F.2d at 97; *Bannum v. City of Louisville*, 958 F.2d 1354, 1362–63 (6th Cir.1992); *Del Monte Dunes, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990); *Xikis v. The City of New York*, 1990 WL 156155 (E.D.N.Y.), at 4.

As noted above, Rivervale has made no application for either an area or a use variance from Local Law No. 5. It has justified its failure to do so on the grounds that it has no potential buyer or specific uses in mind at the present time. Laurino Aff. ¶ 13.

■ Rivervale thus seeks prospective injunctive and declarative relief even though there is no evidence of what, if any, harm would be sustained by Rivervale with respect to a particular plan or proposed use. Injunctive or declaratory relief requiring administrative action which has not been refused because it has not yet been requested (or precluding administrative action which has not yet been taken) indeed may be available in extraordinary circumstances, e.g.:

(a) where procedural bias is clear, as in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973);

(b) where an agency is threatening to act in a way so clearly contrary to law that delay would serve no purpose, see generally *Leedom v. Kyne*, 358 U.S. 184 (1958);

(c) where a contemplated action is entirely beyond the scope of agency authority or jurisdiction, as in *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978); or

(d) where irreparable injury to the complaining party combined with a strong enough showing on the merits justifies the equivalent of preliminary injunctive relief, see *Wagner Seed Co. v. Daggett,* 800 F.2d 310 (2d Cir.1986), discussing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1906).

■ None of these circumstances is present here. Yet these exceptions aside, recourse must be had to the normal local and state procedures for resolving zoning issues before anticipatory relief can be involved, else the operations of local government would be paralyzed. See generally *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *Solid State Circuits, Inc. v. United States EPA,* 812 F.2d 383 (8th Cir.1987).[4]

By denying the defendants' motion to dismiss the complaint in this case, I afforded plaintiff the opportunity to show concrete injury. Rivervale has failed to show such injury with respect to either current or anticipated events.

Where, as here, the injury alleged is speculative and the complaining party cannot even define the precise relief it expects the local authority to deny, a request for anticipatory relief is so lacking in merit as to border on abuse of the litigation process.

### B. *Williamson's Second Prong.*

Even if Rivervale's claims were immune from the final decision requirement, under the second prong of the *Williamson* ripeness inquiry Rivervale's failure to seek compensa-tion renders premature nearly all of its Fifth and Fourteenth Amendment claims. New York State provides the "reasonable, certain and adequate provision for obtaining compensation" which *Williamson* posited, 473 U.S. at 194, 105 S.Ct. at 3120 (citation omitted). See N.Y.Em.Dom.Proc.Law § 101 *et seq.* (McKinney 1979).

■ Seeking an available state remedy for compensation is not required for a substantive due process claim based on arbitrary and capricious government conduct. See *Southview,* 980 F.2d at 95–96. It is, however, required with respect to due process, equal protection and takings claims, where, as in New York, the state system provides appropriate means for seeking compensation, *Sudarsky v. City of New York,* 779 F.Supp. 287, 301 (S.D.N.Y.1991), *aff'd,* 969 F.2d 1041 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1059, 122 L.Ed.2d 365 (1993).

### C. *The Futility Exception.*

Rivervale has invoked a futility exception: it argues that seeking a variance would be futile because it repeatedly requested relief prior to the adoption of Local Law No. 5 and particularly because the rezoning was coordinated by the director of the Town body that hears and determines requests for variances. Laurino Aff. ¶ 14.

The futility exception has been very narrowly construed.[5] While the denial of at least one "meaningful application" for a variance could show futility, see *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1455 n. 6 (9th Cir.1987), *modified* 830 F.2d 968 (1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988); *Landmark Land Company of Oklahoma, Inc. v. Buchanan,* 874 F.2d 717, 722 (10th Cir.1989) ("unsuccessful pursuit" of a variance is the best support for

---

4. In *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986), the Supreme Court noted an additional reason for waiting for a final determination about what compensation, if any, the responsible administrative body intends to provide, or what use may be made of the property: "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other."

5. Rivervale cannot avail itself of the exception discussed in *Lucas v. South Carolina Coastal Council,* — U.S. —, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); in *Lucas,* the special permit procedure was only made available after the plaintiff's litigation had begun, while here, the variance procedure was in place before Rivervale initiated any legal action.

a claim of futility), Rivervale has chosen instead to ground its futility claim on asserted bias.

Rivervale claims that the local authorities are biased against it, that the alleged disparate zoning treatment of Rivervale "effects and was intended to effect punishment and retribution without judicial trial for past acts by UWR and its subsidiaries, including Rivervale", Complaint ¶ 29, resulting in a bill of attainder in violation of Article I, § 10, cl. 1 of the United States Constitution, and that equal protection was denied.[6]

■ A municipal zoning ordinance is initially presumed to be valid, see *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and will not be held unconstitutional if its wisdom is at least fairly debatable and the ordinance bears a rational relationship to a permissible state objective. *Id.*

■ Bias in connection with a legislative enactment is primarily judged on an objective basis: does the enactment itself manifest bias, or can bias be inferred from the factual circumstances? Whereas extrinsic evidence of bias on the part of an administrative decision-maker exercising discretionary or quasi-adjudicative authority may ordinarily be considered, such evidence is allowable with respect to legislative enactments only where special circumstances, such as invidious discrimination, e.g., racial bias, may be involved. See generally *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ No showing of bias, objective or otherwise, has been made here. In support of its claim that the Town intended to punish

Rivervale for previous acts of UWR and its affiliates, Rivervale points to the rezoning of its property from R–40 to R–80 and to its allegation that Local Law No. 5 "furthered no legitimate purpose since it failed to implement the stated goals contained in the Town's own Proposed Master Plan Implementation Report." Kinzey Aff. ¶ 7. Both of these claims were rejected by the Appellate Division of the New York Supreme Court. That court, after addressing the issue of the Town's compliance with the SEQRA environmental review process, reached the merits of Rivervale's other claims; it found that the rezoning was consistent with the Town's master plan and that the discretionary zoning was "entirely reasonable." *Rivervale Realty v. Town Bd.*, 170 A.D.2d 762, 565 N.Y.S.2d 583, 584 (N.Y.App. Div., 3d Dep't 1991). The state court also found that even if the Town mistakenly believed Rivervale's property to be watershed property, the purposes of limiting future development and preserving open space were reasonable. *Id.* Whether or not there is any preclusive effect to this decision,[7] see Part VI below, Rivervale has not created a triable issue of material fact with respect to the reasonableness of the Town's adoption of its zoning amendments.

■ Even if the constitutional issues raised by Rivervale in this federal action are not precluded, the responses given by the Town's planning consultants to Rivervale's protests during the public hearings on the adoption of Local Law No. 5 do not support a reasonable inference of constitutionally impermissible bias. The record indicates, for example, that one basis upon which the Town rejected Rivervale's requests for an advance affirmative legislative exemption from the

---

6. As the basis for its equal protection claim, Rivervale alleges that the Town engaged in "discriminatory treatment ... motivated by the perception and belief of the Town Board and the Planning Board that it would be politically expedient to mistreat Rivervale because UWR and its affiliates were unpopular and disliked by the voters of the Town as the result of the voters' resentment of the rates charged by the water companies, and their misperception that Rivervale's affiliates had been able to obtain their real property at unreasonably low prices through the threat of taking that property through eminent domain." Complaint ¶ 23.

7. A preclusive effect may be accorded in federal court to a state court's prior determination where, as here, the issues presented to the federal court have been "necessarily decided" by the state court as the basis for its determination, and the party resisting preclusion had a full and fair opportunity in state court to litigate those issues, see *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir.), cert. denied, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990).

zoning amendment was material contained in a report submitted to the Town by Rivervale itself:

> The communities in the Company's watershed are mainly bedroom communities ... They are dependent upon a certain aesthetic character [to] which the Company properties contribute. The properties also act as a natural, aesthetic buffer to these highly developed residential areas. Therefore, significant development of the Company property would diminish the aesthetic character of the area. Valuable green areas and open space would be lost as well as a natural resource buffer.

Generic Environmental Impact Statement, Proposed Revised Zoning Code, Orangetown, New York, Comment No. LD–6–3, Laurino Aff., Exh. H at 15.

Submission to a fatally biased tribunal is itself a constitutional injury, see *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir.1989). However, the party alleging bias is required to submit proof of partiality or its appearance on the part of the decision-makers, such as substantial pecuniary interest in the outcome, see *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973).

Rivervale has offered no evidence of bias or intentionally discriminatory conduct by the Town defendants.[8] Rivervale has provided no newspaper citations, no records of previous town meetings on other subjects, and no comments made by town officials to support its conclusory allegations of past "great animosity" to UWR or to give factual evidence of the nature of "past disputes." See Laurino Aff. ¶ 10; see also Part VIII below.

Consequently, Rivervale has not established a triable issue of material fact with regard to its claim of futility. See *Xikis v. The City of New York*, 1990 WL 156155, at 6 (E.D.N.Y.) (rejecting futility claim even though plaintiff alleged local boards were "openly hostile" to commercial use of plaintiff's property).

Not having requested an exemption or variance and hence none having been denied, Rivervale has not demonstrated the evidence of injury requisite for consideration of its due process, equal protection, and takings claims, and these claims are premature. See *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (Article III § 2 of the United States Constitution limits federal courts to adjudicating an actual "case or controversy").

### V

■ Rivervale argues that the zoning determinations were illegally based on the identity of the owner of the property rather than the locality and topography of the land owned by Rivervale, see Kinzey Aff. ¶ 20. The Town did not single out UWR in referring to its properties, contiguous to other similarly rezoned areas, by name but also referred to such other properties in terms of the identity of the owner: "The Henry Kaufman Camp" and "The Rockland Country Club and two adjacent parcels". See Laurino Aff., Exh. E at 7.

I find neither a genuine issue of material fact nor any merit with respect to Rivervale's bill of attainder claims.

### VI

In the appeal of Rivervale's Article 78 proceeding, the Appellate Division, Third Department, sustained the reasonableness of Local Law No. 5. *Rivervale Realty v. Town Bd.*, 170 A.D.2d 762, 565 N.Y.S.2d 583 (N.Y.App.Div., 3d Dep't, 1991). Rivervale challenges that reasonableness again in the present litigation.

■ Duplicative, overlapping litigation is burdensome to both the adversaries and to the legal system. For these reasons, withholding known claims growing out of the same circumstances as those pleaded in order to obtain more bites at the apple invites their preclusion. See generally, e.g., *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192–

---

8. Rivervale offers a letter from one property owner in which the writer refers to an "attack" by the Town on the water company, Laurino Aff. ¶ 8 and Exh. K. The view of one citizen cannot

fairly be attributed to the Town or its officials. The property owner declined at deposition to adhere to the position taken in the letter. Def. Reply Mem. of Law, June 17, 1992, at 9.

93, 445 N.Y.S.2d 68, 429 N.E.2d 746 (1982). This failure to raise available federal constitutional claims in the course of judicial review of state or local administrative action may result in their preclusion. See *Fay v. South Colonie Central School District,* 802 F.2d 21, 29 (2d Cir.1986) (even if plaintiff's claims were not litigated in an Article 78 proceeding, they could have been litigated there); *Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir.1985).

■ Similarly, where a claim is necessarily decided in order to reach the decision adopted, *res judicata* or collateral estoppel may apply. See *Fay,* 802 F.2d at 28; *Friarton Estates Corp. v. City of New York,* 681 F.2d 150 (2d Cir.1982); *Herman v. City of New York,* 1988 WL 117428 (S.D.N.Y.), at 2; *Albenga v. Ward.,* 635 F.Supp. 660, 663 (S.D.N.Y.1986); *Collard v. The Incorporated Village of Flower Hill,* 604 F.Supp. 1318, 1322–23 (E.D.N.Y.1984), *aff'd* 759 F.2d 205 (2d Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985).

■ The Full Faith and Credit Act, 28 U.S.C. § 1738, requires all federal courts to give preclusive effect to a state-court judgment whenever the courts of the state in which the judgment was rendered would do so. *Migra v. Warren City School District,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).[9] At the same time it is important for courts to be vigilant to avoid preclusion of claims which in reality could not be pursued because of procedural, factfinding, jurisdictional, or subject matter limitations in state procedures for review of administrative action. Parties seeking to challenge administrative rulings must not be required to forfeit federal rights where the state court cannot rule on a claim.

■ Rivervale sought to annul Local Law No. 5 on the grounds that its adoption was in violation of lawful procedures under SEQRA, and that its adoption and application as to Rivervale's property were illegal, arbitrary and capricious, and lacked a rational basis. Def. Motion for Summary Judgment, Exh. A (Verified Petition, Dec. 14, 1988). Rivervale argues that its constitutional claims in this federal action, which Rivervale did not assert in the state action, are more broadly based on the enactment of the zoning amendments as a whole. Yet the central roles of the environmental study and of the public hearings held prior to the Town's adoption of the zoning amendments, both of which were part of the record before the state courts, suggest that claim preclusion applies here. In any event, principles of issue preclusion and a lack of merit in Rivervale's other claims require dismissal of Rivervale's complaint, and therefore I need not decide the outer parameters of claim preclusion in this case

The New York Appellate Division upheld the lower court's dismissal of Rivervale's Article 78 challenge to the Town's SEQRA review. Unlike the lower court, the Appellate Court reached the merits. It ruled, *inter alia,* that the application of Local Law No. 5 to Rivervale's property was not "illegal, arbitrary or an abuse of discretion" and that the Town's "discretionary zoning determination [with respect to Rivervale's property] is entirely reasonable." *Rivervale Realty,* 170 A.D.2d 762, 565 N.Y.S.2d at 584.

Zoning ordinances "will survive substantive due process challenge unless they are 'clearly arbitrary and unreasonable, having no substantive relation to the public health, safety, morals, or general welfare.'" *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911, 915 (2d Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989) (quoting *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47

9. Rivervale argues that my earlier denial of defendants' motion to dismiss the complaint is the law of the case and bars granting the present motion for summary judgment. This argument fails. The fact that a complaint is found to state a claim on its face permits issues raised to be explored and resolved; it hardly guarantees that the resolution will require a trial if a party has

moved for summary judgment, there are no genuine issues of material fact, and in the absence of such issues a factfinder could not decide the case in favor of the non-moving party. See *Zdanok v. Glidden Co.,* 327 F.2d 944, 952–53 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964)).

S.Ct. 114, 121, 71 L.Ed. 303 (1926)). The Appellate Division's determination of these issues is highly relevant to, if not dispositive of, Rivervale's constitutional claims.

Rivervale's equal protection claim alleges disparate zoning treatment of Rivervale, no legitimate governmental interests in the rezoning, and intentional and unlawful discrimination against Rivervale as part of an "identifiable or easily ascertainable group of property owners." Complaint ¶¶ 21–25. State and local governmental decisions must only be rationally related to a legitimate state interest, unless a given distinctive treatment involves either a fundamental right or a suspect classification, see *Nordlinger v. Hahn,* — U.S. —, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992), neither of which is involved here. The central question then is whether the Town had a rational basis for rezoning Rivervale's property.[10]

The Appellate Division found that the Town's zoning decision with respect to Rivervale was "entirely reasonable" and consistent with the Town's master plan. Moreover, there is no evidence that only Rivervale's land was rezoned to R–80. See Laurino Aff., Exhibit E, at 7; see also Part V above. And some imprecision is permitted in regulations such as those at issue here. See *Greene v. Town of Blooming Grove,* 879 F.2d 1061, 1064 (2d Cir.1989). Thus there is neither a triable issue of material fact nor any merit to Rivervale's equal protection claim.

### VII

■ Rivervale also asserts that the rezoning of its acreage constituted an unconstitutional taking of its property without just compensation under the Fifth and Fourteenth Amendments. *Lucas v. South Carolina Coastal Council,* — U.S. —, —, 112 S.Ct. 2886, 2889, 120 L.Ed.2d 798 (1992), reaffirmed prior rulings that for a regulatory taking to occur, a property owner must have been "called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle." *Id.,* — U.S. at —, 112 S.Ct. at

2895. The *Lucas* Court noted that "'the economic impact of the regulation on the claimant and . . . the extent to which the regulation has interfered with distinct investment-backed expectations' are keenly relevant to takings analysis generally." *Id.,* — U.S. at — n. 8, 112 S.Ct. at 2895 n. 8, quoting *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The Court in *Lucas* also stated that "it seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers," — U.S. at —, 112 S.Ct. at 2899.

■ Deprivation of the best possible economic use of property does not alone constitute a taking. See *Penn Central,* 438 U.S. at 127, 98 S.Ct. at 2660; *Sadowsky v. New York,* 732 F.2d 312, 317 (2d Cir.1984) ("prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred"). In *Sadowsky,* the court reasoned that the proper inquiry is whether the use allowed is sufficiently desirable to permit property owners to "sell the property to someone for that use." 732 F.2d at 318.

■ Rivervale cannot show that it was deprived of economically viable use of its property or that it is unsalable; subsequent to the adoption of Local Law No. 5, it conveyed 227 acres of its property for $25 million Laurino Aff. ¶ 12. Rivervale has not submitted any proof of acquisition cost or fair market value at the time the property was acquired, nor any estimate of the current fair market value of its remaining rezoned property. See generally, Trevaskis, "Measure of Damage for Regulatory Taking," 3 *Probate and Property,* No. 2 at 17 (ABA Mar./Apr. 1992).

Rivervale attempts to minimize the significance of its $25 million sale and to maximize the alleged economic hardship imposed by the rezoning on 92 of its remaining 143 acres:

---

10. Areas which had already been developed were excluded from the rezoning; thus retroactive impact on already-developed property was avoided.

See *People v. Miller,* 304 N.Y. 105, 106 N.E.2d 34 (1952).

Rivervale was extremely fortunate to have negotiated very favorable terms for Rivervale on this transaction [the sale of 227 acres]. Rivervale does not expect its future sales of remaining properties will be as fortuitous.... Of Rivervale's remaining property, there are no large parcels of contiguous acreage ... Moreover, the real estate market has changed to the seller's detriment since the sale of the golf course parcel. Rivervale is informed that the Japanese buyer of the 227 acres has put the parcel on the market at seventeen million dollars ($17M), a price substantially lower than the twenty-five million ($25M) it had paid to Rivervale.

Laurino Aff. ¶ 12. Such an argument invites the judicial system to shield litigants from the risks of doing business, and to make of the litigation process a means of protecting litigants from adverse fluctuations in the economy that interfere with their investment expectations. I decline this invitation.

Rivervale has an alternative theory, equally meritless. It argues that because it was treated as a public utility it is "constitutionally entitled to a reasonable return on property dedicated to public use." Rivervale cites no authority that a rate-of-return concept, applicable to rate regulation by public utility commissions, has any application to zoning or other land use controls. Nor does it provide any proof that with respect to the rezoning it is actually being treated as a regulated utility.[11]

## VIII

■ Rivervale argues that summary judgment is premature because discovery is incomplete and in its preliminary stages. Kinzey Aff. ¶ 11. Federal Rule 56 requires that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986). Rule 56(f) provides a "procedural escape hatch" which is intended to assist "a party who genuinely requires additional time to marshal

'facts essential to justify [its] opposition' when confronted by a summary judgment motion." *Paterson–Leitch Co., Inc. v. Massachusetts Elec. Co.*, 840 F.2d 985, 988 (1st Cir.1988). The non-moving party must claim an inability to produce evidence and must explain in an attached affidavit how that evidence, when forthcoming, may reasonably be expected to raise a genuine issue of material fact. *Burlington Coat Factory Warehouse v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985).

Rivervale has failed to show that the documents it has requested or the depositions it wishes to take are likely to change the outcome of this summary judgment motion. For example, Rivervale indicates that the defendants have not produced tapes or transcripts of various town meetings, Kinzey Aff. ¶ 10, but does not assert that anything occurred at those meetings that would justify the relief sought in this lawsuit, nor does it say that those meetings were closed to its representatives or that it had no notice of them. Rivervale has offered no reasonable basis from which to infer that discovery would produce evidence of the existence of a genuine issue of material fact that would defeat this motion for summary judgment.

## IX

In conflicts of this type between property owners and local authorities, respect for the "bundle of rights" conveyed through property ownership is essential. See *Lucas v. South Carolina Coastal Council*, —— U.S. ——, ——, 112 S.Ct. 2886, 2889, 120 L.Ed.2d 798 (1992). Similarly, the functions of local authorities where legitimately exercised are deserving of judicial protection from obstruction by means of lawsuits asserting claims for damages (and attorney's fees) where no evidence of any violation of federal constitutional or statutory law exists.

The Clerk is directed to close this case.

**SO ORDERED**

---

11. If Rivervale were treated by the Town as subject to a rate-of-return criterion not applicable to other property owners in regard to zoning, that treatment might entitle those other property owners to raise equal protection issues.